**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LocateAI Realty Incorporated, et al., | No. CV-25-04959-PHX-JZB |
| Plaintiffs, | **ORDER** |
| v. | |
| Ty Brewster, et al., | |
| Defendants. | |

Pending before the Court is Defendants' "Motion to Dismiss or Alternatively Motion to Compel Arbitration."[1] (Doc. 26.) In the Motion, Defendants request the Court, pursuant to Rule Fed. R. Civ. P. 12(b)(6) and the Federal Arbitration Act ("FAA"), dismiss this action or, alternatively, stay this action and compel arbitration. (*Id.* at 1.) Plaintiffs have filed a Response, (doc. 27), and Defendants have filed a Reply (doc. 28). On May 8, 2026, this Court heard oral arguments on the Motion. (Doc. 30.)

**I.    SUMMARY.**

This action is based upon an alleged breach of fiduciary duty and contractual obligations between Plaintiffs and Defendants Brewster and FranReal LLC ("FranReal"). There are two matters at issue here. First, whether Defendant FranReal, as a nonsignatory to the Broker and Employment Agreements between Plaintiffs and Defendant Brewster, may enforce the arbitration clauses contained within both agreements. Second, whether the presence of an injunctive relief carveout in the Broker Agreement and a request for permanent injunctive relief in Plaintiffs' Complaint requires this action to be litigated only in federal court.

---

[1]    All parties have consented to Magistrate Judge jurisdiction in this action. (Doc. 19.)

Because the trier of fact would be required to consider the Broker and Employment agreements in resolving Plaintiffs' claims, and considering nonsignatory Defendant FranReal's conduct was intertwined with signatory Defendant Brewster, the Court finds that both Defendants may compel arbitration here. Second, the Court finds that the injunctive relief carveout and request for permanent injunctive relief does not preclude arbitration in the instant action. Hence, the Court shall grant Defendants' Motion in part, staying this action pending arbitration.

**II.    BACKGROUND.**

This action arises from a Broker Agreement and Employment Agreement between Plaintiffs and Defendant Brewster that were executed on October 1, 2020, and February 6, 2024, respectively. (Doc. 1 at 5); (doc. 26-1 at 24.) The Broker Agreement required that commissions for property sales and leases would be paid to Plaintiff before being distributed to Defendant Brewster and imposed a strict confidentiality obligation upon Brewster. (Doc. 1 at 6–7.) Additionally, both Agreements contained arbitration provisions. See (doc. 26-1.) The Broker Agreement contained the following provisions:

> **10.    Arbitration and Equitable Relief.**
>
> A.    ***Arbitration***. In consideration of Broker's consulting relationship with the Company, its promise to arbitrate all disputes related to Broker's consulting relationship with the company and Broker's receipt of the compensation and other benefits paid to Broker by Company, at present and in the future, Broker agrees that any and all controversies, claims, or disputes with anyone (including Company and any employee, officer, director, shareholder or benefit plan of the Company in their capacity as such or otherwise), arising out of, relating to, or resulting from Broker's consulting or other relationship with the company, including any breach of this agreement, shall be subject to binding arbitration under the Federal Arbitration Act (the "FAA"). The FAA's substantive and procedural rules shall govern and apply to this arbitration agreement with full force and effect, and any state court of competent jurisdiction may stay proceedings pending arbitration or compel arbitration in the same manner as a federal court under the FAA. Broker further agrees that, to the fullest extent permitted by law, Broker may bring any arbitration proceeding only in Broker's individual capacity, and not as a plaintiff, representative, or class member in any purported class, collective, or representative lawsuit or proceeding. Broker may, however, bring a proceeding as a private attorney general as permitted by law. **To the fullest extent permitted by law, Broker agrees to arbitrate any and all common law and/or statutory claims under local, state, or federal law, including, but not limited to, claims under Arizona state law, claims relating to employment or independent contractor status, classification, and relationship with the Company, and claims of breach of contract, except as prohibited by law. Broker also agrees to arbitrate**

**any and all disputes arising out of or relating to the interpretation or application of this agreement to arbitrate, but not disputes about the enforceability, revocability or validity of this agreement to arbitrate or the class, collective and representative proceeding waiver herein. With respect to all such claims and disputes that Broker agrees to arbitrate, Broker hereby expressly agrees to waive, and does waive, any right to a trial by jury. Broker further understands that this agreement to arbitrate also applies to any disputes that the Company may have with Broker**. Broker understands that nothing in this agreement requires Broker to arbitrate claims that cannot be arbitrated under applicable law, such as claims under the Sarbanes-Oxley Act.

B.    *Procedure*. Broker agrees that any arbitration will be administered by Judicial Arbitration & Mediation Service, Inc. ("JAMS")] pursuant to its Employment Arbitration Rules & Procedures[], which are available at http://www.jamsadr.com/rules-employment-arbiration/. If the JAMS rules cannot be enforced as to the arbitration, then the parties agree that they will arbitrate this dispute utilizing JAMS comprehensive arbitration rules and procedures or such rules as the arbitrator may deem most appropriate for the dispute. Broker agrees that the use of the JAMS rules does not change Broker's classification to that of an employee. To the contrary, Broker reaffirms that Broker is an independent contractor. Broker agrees that the arbitrator shall have the power to decide any motions brought by any party to the arbitration, including motions for summary judgment and/or adjudication and motions to dismiss and demurrers applying the standards set forth under the Arizona Rules of Civil Procedure. Broker agrees that the arbitrator shall issue a written decision on the merits. Broker also agrees that the arbitrator shall have the power to award any remedies available under applicable law, and that the arbitrator shall award attorneys' fees and costs to the prevailing party, where permitted by applicable law. Broker agrees that the decree or award rendered by the arbitrator may be entered as a final and binding judgment in any court having jurisdiction thereof. Broker agrees that the arbitrator shall apply substantive and decisional Arizona law to any dispute or claim, without reference to rules of conflict law. Broker further agrees that any arbitration under this agreement shall be conducted in Maricopa County, Arizona.

\* \* \*

D.    *Availability of Injunctive Relief*. The parties agree that any party may also petition the court for injunctive relief where either party alleges or claims a violation of any agreement regarding intellectual property, confidential information or noninterference. In the event either party seeks injunctive relief, the prevailing party shall be entitled to recover reasonable costs and attorneys' fees.

(Doc. 26-1 at 5–6) (emphasis in original).

The Employment Agreement contains a similar arbitration provisions but does not include an injunctive relief carveout provision. *See* (*id.* at 21–22.) Arbitration under the Employment Agreement would also be administered by JAMS. (*Id.* at 21.)

During the course of his employment, Defendant Brewster formed FranReal and

allegedly breached "his fiduciary obligations and contractual promises of loyalty and confidentiality." (Doc. 1 at 9.) Specifically, while he was still employed by Plaintiffs, Defendant Brewster allegedly "diverted his attention to developing a competing entity, used [Plaintiffs'] confidential client data to populate FranReal's business pipeline, and positioned himself to usurp commissions and goodwill from transactions that were initiated while he was affiliated with [Plaintiffs]." (*Id.*)

On December 26, 2025, Plaintiffs filed their six-count Complaint against both Defendants. (*Id.* at 1.) Plaintiffs asserted the following claims against the Defendants: (1) a breach of contract claim against Defendant Brewster; (2) a breach of the duty of loyalty against Defendant Brewster; (3) a tortious interference with contract and business relationships against both Defendants; (4) a conversion claim against both Defendants; (5) a claim for declaratory relief against Defendant Brewster; and (6) a claim for injunctive relief against both parties. (*Id.* at 18–30.)

On January 12, 2026, Defendant Brewster filed an Answer. (Doc. 11.) On January 26, 2026, and February 6, 2026, respectively, Defendant Brewster filed Amended Answers on his and Defendant FranReal's behalf. (Docs. 14, 21.) On February 24, 2026, both Amended Answers were stricken because Defendant Brewster—a non-attorney—lacked a legal right to represent Defendant FranReal *pro se*. (Doc. 24.) On February 27, 2026, Defendants obtained counsel. (Doc. 25.) Thereafter, on March 20, 2026, Defendants filed the instant Motion. (Doc. 26.)

### III.   LEGAL STANDARDS.

Under Rule 12(b)(6), dismissal is proper where "the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Regarding the FAA, the act, "[w]ith limited exceptions, . . . governs the

enforceability of arbitration agreements in contracts involving interstate commerce." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (citing 9 U.S.C. § 1 *et seq.*). "The FAA states that 'a written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2). Section 3 of the FAA "provides that a federal court must, upon application of one of the parties, stay an action 'brought upon any issue referable to arbitration,' unless 'the applicant for the stay is in default in proceeding with such arbitration.'" *Altela Inc. v. Ariz. Sci. & Tech. Enters. LLC*, No. CV-16-01762-PHX-DGC, 2016 U.S. Dist. LEXIS 117370, at *10–11 (D. Ariz. Aug. 31, 2016) (cleaned up) (quoting 9 U.S.C. § 3). Additionally, section 4 of the FAA "provides that 'a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate may petition a district court to compel arbitration, and 'upon being satisfied that the making of the agreement to arbitrate or the failure to comply therewith is not in issue,' the court must enforce the agreement." *Altela Inc.*, 2016 U.S. Dist. LEXIS 117370, at *11 (cleaned up) (quoting 9 U.S.C. § 4).

"By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130.

**IV.    DISCUSSION.**

Presently, the parties do not refute that both the Broker and Employment Agreements are valid and enforceable arbitration agreements. Rather, the parties, both in their briefings and during oral arguments, disagree on whether the Broker and Employment

- 5 -

Agreements encompass the dispute at his here. The crux of the parties' dispute is first, whether Defendant FranReal, as a nonsignatory, may enforce the arbitration agreement, and second, whether the Broker Agreement's injunctive relief provision along with Plaintiffs' request for permanent injunctive relief prevents the instant dispute from being sent to arbitration. For the following reasons, the Court finds that neither Defendant FranReal's nonsignatory character nor the possibility of injunctive relief bars this matter from being sent to arbitration.

### A. Invocation of Arbitration Clause by a Nonsignatory.

The parties first disagree whether signatory Defendant Brewster and nonsignatory Defendant FranReal have standing to compel arbitration in this matter. Plaintiffs assert that Defendant FranReal cannot compel arbitration in this matter because Arizona's equitable estoppel rule to arbitration is inapplicable here. (Doc. 27 at 8–9.) Defendants assert that equitable estoppel is not the only pathway for a nonsignatory to enforce and arbitration agreement, and in any event, it is clear that Arizona's equitable estoppel rule applies to the case at hand. (Doc. 28 at 6–8.) Because the Court finds that Arizona's equitable estoppel rule permits nonsignatory Defendant FranReal to invoke the arbitration clauses in the Broker and Employment Agreements, the Court need not address the alternative pathways asserted by Defendants.

At its core, "[a]rbitration is a matter of contract." *Olson v. FCA US, LLC*, 172 F.4th 1033, – –, 2026 U.S. App. LEXIS 9916, at *7 (9th Cir. 2026); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) ("The FAA thereby places arbitration agreements on an equal footing with other contracts . . . and requires courts to enforce them according to their terms."). "Generally, parties who have not assented to an arbitration agreement cannot be compelled to arbitrate under its terms." *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870 (9th Cir. 2021); *Kramer*, 705 F.3d at 1126 ("Generally, the contractual right to compel arbitration may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration.") (citation omitted). "But 'the United States Supreme Court has held that a litigant who is not a party to an arbitration agreement

may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement.'" *Id.* (cleaned up) (quoting *Kramer*, 705 F.3d at 1128); *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009) (noting that a litigant who is not a party to an arbitration agreement may nonetheless invoke the agreement if the relevant state contract law so allows).

Here, it is undisputed that Arizona state contract law applies. Generally, under Arizona law, a party is only bound to arbitrate disputes which it has contractually agreed to arbitrate. *See Smith v. Pinnamaneni*, 254 P.3d 409, 415 (Ariz. Ct. App. 2011) (citing *Clarke v. ASARCO, Inc.*, 601 P.2d 587, 589 (Ariz. 1979)). But, a nonsignatory may be bound to arbitrate a dispute based on the theories of "incorporation by reference, assumption, agency, veil-piercing or alter ego, equitable estoppel, and third-party beneficiary." *Dueñas v. Life Care Ctrs. of Am.*, 336 P.3d 763, 772 (Ariz. Ct. App. 2014).

The theory applicable to the case at hand is the principle of equitable estoppel.[2] "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citation omitted). Under Arizona law, the principle of equitable estoppel applies differently in two scenarios: (1) whether a signatory is attempting to compel a nonsignatory to arbitrate; and (2) when a nonsignatory is attempting to compel a signatory to arbitrate. *See Sun Valley Ranch 308 Ltd. P'ship v. Robson*, 294 P.3d 125, 134 (Ariz. Ct. App. 2012). This action involves the latter category of equitable estoppel.

"A non-signatory may compel arbitration with a signatory to an arbitration agreement if the claims at issue are 'intimately founded in and intertwined with the underlying contract obligations.'" *Tradeline Enters. Private v. Jess Smith & Sons Cotton*, LLC, 772 F. App'x 585, 586 (9th Cir. 2019) (quoting *Sun Valley Ranch*, 294 P.3d at 135). Specifically, Arizona law recognizes two scenarios whereby a nonsignatory may compel

---

[2] Sometimes termed the "alternative estoppel theory." *Guglielmo v. LG&M Holdings LLC*, No. CV-18-03718-PHX-SMB, 2019 U.S. Dist. LEXIS 121102, at *16 (D. Ariz. July 19, 2019).

arbitration. *See Cardona v. Exclusive Auto Grp. LLC*, No. CV-25-01843-PHX-SPL, 2025 U.S. Dist. LEXIS 256452, at *4 (D. Ariz. Dec. 11, 2025). First, a nonsignatory may compel arbitration "when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." Id. at *4–5 (quoting *Sun Valley Ranch*, 294 P.3d at 134). At issue in the instant litigation is the second scenario, where "[a] non-signatory may compel arbitration when 'each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement,' such that 'the signatory's claims arise out of and relate directly to the written agreement.'" *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1070 (9th Cir. 2020) (quoting *Sun Valley Ranch*, 294 P.3d at 135).

In this action, Plaintiffs' claims against Defendant FranReal are intertwined with Defendant Brewster's Broker and Employment Agreements. In fact, each of Plaintiffs' claims against Defendant FranReal "makes reference to or presumes the existence of th[ose] written agreement[s]," *Sun Valley Ranch*, 294 P.3d at 135, making arbitration appropriate here. Presently, Plaintiffs have asserted three claims that touch Defendant FranReal: (1) a tortious interference with contract and business relationships claim; (2) a conversion claim; and (3) a claim for injunctive relief. (Doc. 1 at 21–26, 28–30.) Each claim plainly makes reference to or presumes the existence of the Broker and Employment Agreements between Plaintiffs and Defendant Brewster.

First, regarding Plaintiffs' tortious interference with a contract claim, Plaintiffs state that "LocateAI has a contractual relationship with Brewster himself under the Broker [and] Employment Agreement[s], which govern the ownership of transactions, commission payments, confidentiality obligations, and post-termination restrictions," whereby "FranReal enabled Brewster's breaches [of these agreements] by providing the vehicle through which he continued to service LocateAI customers, divert commissions owed to LocateAI, and misuse Confidential Information[.]" (*Id.* at 22–23.) Indeed, Plaintiffs further note that "FranReal intentionally interfered with LocateAI's contractual relationship with

Brewster by knowingly inducing, encouraging, and substantially assisting Brewster to breach his contractual obligations to LocateAI." (*Id.* at 23.) Given these allegations in the Complaint, Plaintiffs' tortious interference with a contract claim arise out of and directly relate to the Broker and Employment Agreements.

Turning next to Plaintiffs' conversion claim, Plaintiffs unconditional assert that "[u]nder the Broker Agreement, all . . . commissions were required to be paid directly to Locate Realty," and that Defendants "Brewster and FranReal wrongfully exercised dominion and control over these funds" in contravention to the Broker Agreement. (*Id.* at 25.) In short, Plaintiffs conversion claim against nonsignatory Defendant FranReal is grounded by the provisions contained within the Broker Agreement. (*Id.*) Therefore, Plaintiffs' conversion claim against Defendant FranReal arises out of and directly relates to the Broker Agreement.

Finally, Plaintiffs' injunctive relief claim against nonsignatory Defendant FranReal similarly arises out of the Broker and Employment Agreements. In this claim, Plaintiffs clearly state that they "seek[] preliminary and permanent injunctive relief . . . to prevent ongoing and irreparable harm arising from ***Defendants'*** continuing misuse of Confidential Information, solicitation of Company clients, and diversion of business opportunities in violation of the Broker Agreement and applicable law." (*Id.* at 28) (emphasis added). Based upon this unqualified assertion, it is apparent that Plaintiffs' injunctive relief claim against nonsignatory Defendant FranReal makes reference to the Broker Agreement.

Given these facts, it is self-evident that the trier of fact will be required to consider both the Broker and Employment Agreements in resolving Plaintiffs' claims against nonsignatory Defendant FranReal. Further, considering that Defendant FranReal is a "single member LLC," (doc. 30), its conduct is inextricably intertwined with that of Defendant Brewster. Accordingly, the Court finds that, pursuant to Arizona's principle of equitable estoppel, nonsignatory Defendant FranReal may compel arbitration here.

**B. Possibility of Injunctive Relief**.

The parties' second dispute revolves around section 10(D) of the Broker Agreement,

which provides that: "any party may also petition the court for injunctive relief where either party alleges or claims a violation of any agreement regarding intellectual property, confidential information or noninterference."[3] (Doc. 26-1 at 6.) Plaintiffs assert that section 10(D) of the Broker Agreement preserves this Court's jurisdiction over the dispute and precludes arbitration of their claims against both Defendants. (Doc. 27 at 6–8.) Particularly, Plaintiffs aver that their claims for permanent injunctive and declaratory relief "fall squarely within [section 10(d)'s] carveout," precluding arbitration here. (*Id.* at 7.) Defendants disagree. (Doc. 28 at 3–5.) Specifically, Defendants assert that section 10(D) is "not a forum selection clause for the entire dispute." (*Id.* at 4.) The Court agrees with Defendants.

The Supreme Court has made abundantly clear that the FAA "require[s] that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation." *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011). Although courts "may submit to arbitration only those disputes that the parties have agreed to submit," *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010), it cannot "issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration." *Cocchi*, 565 U.S. at 19. To do so would contravene the FAA's "emphatic federal policy in favor of arbitral dispute resolution." *Cf. id.* at 21 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 631 (1985)). Instead, where "a complaint contains both arbitrable and nonarbitrable claims, the Act requires courts to 'compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.'" *Cocchi*, 565 U.S. at 22 (quoting *Dean Witter Reynolds*, 470 U.S. at 217).

Given the FAA's liberal federal policy favoring arbitration, and considering the parties' express agreements "to arbitrate any and all common law and/or statutory claims under local, state, or federal law, including, but not limited to, . . . claims relating to

---

[3] The Employment Agreement does not contain an injunctive relief carveout provision. (Doc. 26-1 at 20–23.)

employment or independent contractor status, classification, and relationship with the Company, and claims of breach of contract"—including whether the question of arbitrability is subject to arbitration[4]—the Court finds that section 10(D) does not bar arbitration of Plaintiffs' claims in this action. Put simply, it would contravene decades of federal policy favoring arbitration to find that a ***permissive*** injunctive relief provision and the ***hypothetical*** chance of injunctive relief down the road of this litigation precludes arbitration of arbitrable claims. Hence, the Court does not find that the presence of claims for declaratory nor permanent injunctive relief preclude compelling arbitration of the arbitrable claims in this case. Accordingly, the Court shall compel arbitration.

**C. Dismissal or Stay of this Action**.

Because the Court finds that there are arbitrable claims in this action, the Court must now decide whether to stay or dismiss this action. Pursuant to the FAA, "upon determining that an issue in a pending action is subject to a mandatory arbitration provision, a federal court 'shall . . . stay the action until such arbitration has been had.'" *LeFever v. Fairway Indep. Mortg. Corp.*, No. CV-18-08326-PCT-DJH, 2019 U.S. Dist. LEXIS 248077, at *18–19 (D. Ariz. Oct. 31, 2019) (quoting 9 U.S.C. § 3). "[N]otwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014).

---

[4]    Neither party has asserted the scope of the arbitration provision. And the Court need not address it here, because the parties have delegated the issue of arbitrability to the arbitrator. "Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002)). "However, these gateway issues can be expressly delegated to the arbitrator where 'the parties clearly and unmistakably provide otherwise.'" *Brennan*, 796 F.3d at 1130 (quoting *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 649 (1986)) (emphasis omitted). In this circuit, an arbitration agreement can "clearly and unmistakably delegates issues of arbitrability to an arbitrator when it incorporates by reference the American Arbitration Association's rules of arbitration." *Ehrmantraut v. Safeway Inc.*, 732 F. Supp. 3d 1030, 1037 (D. Ariz. 2024) (*Brennan*, 796 F.3d at 1130). Courts within this circuit "have extended this logic to the JAMS rules." *Ehrmantraut*, 735 F. Supp. 3d at 1037 (citations omitted). Just as was the case in *Ehrmantraut*, the parties incorporated the JAMS rules in their Agreements here. Hence, the Court finds that the issue of arbitrability has been delegated to the arbitrator.

Because of Plaintiffs' requests for injunctive relief, and considering that the exact scope of arbitrability in this matter is unresolved,[5] the Court finds the proper course here is to compel arbitration and stay this matter. While Plaintiffs assert that staying this action pending arbitration would "substantially prejudice" them, (doc. 27 at 15–16), the Court disagrees. First, Plaintiffs' assertion that "JAMS has no jurisdiction over FranReal," (*id.* at 16), is incorrect for the reasons stated above.[6] Second, Plaintiffs' claim that "staying this action would effectively strip [Plaintiffs] of the injunctive relief the parties expressly agreed to," (*id.*), is unavailing considering the Court, by not dismissing this action, has created an off ramp should Plaintiffs, following arbitration, still seek injunctive relief against Defendants. Therefore, the Court shall stay this action pending arbitration.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss or Alternatively Motion to Compel Arbitration (doc. 26) is **GRANTED IN PART**. The Court shall compel arbitration in this matter.

**IT IS FURTHER ORDERED** that this action is **STAYED** pending completion of the parties arbitration.

**IT IS FURTHER ORDERED** that the parties shall jointly file a status report within **60 DAYS** of this Order and every **120 DAYS** thereafter describing the status of arbitration.

**IT IS FURTHER ORDERED** that the parties shall **PROMPTLY** notify the Court of any arbitration decision or settlements.

Dated this 22nd day of May, 2026.

Honorable John Z. Boyle
United States Magistrate Judge

---

[5] *See supra* note 4.
[6] *See supra* section IV.A.